**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 2 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Oct. 2, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Matter of the: | ) | |
| | ) | No. 89419-1 |
| ESTATE OF HELEN M. HAMBLETON, | ) | |
| | ) | |
| Deceased, | ) | |
| | ) | |
| STEVE HAMBLETON, in his capacity as personal representative of the Estate of Helen M. Hambleton, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | consolidated with |
| | ) | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Appellant. | ) | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | ) | |
| In re the Matter of the: | ) | No. 89500-7 |
| | ) | |
| ESTATE OF JESSIE CAMPBELL MACBRIDE, | ) | En Banc |
| | ) | |
| Deceased, | ) | Filed OCT 0 2 2014 |
| | ) | |
| THOMAS A. MACBRIDE III and PHILIP MACBRIDE, Personal Representatives of the Estate of Jessie Campbell Macbride, | ) | |
| | ) | |
| Appellants, | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

WIGGINS, J.—In 2013, the legislature amended the Estate and Transfer Tax Act, chapter 83.100 RCW, in response to our decision in *In re Estate of Bracken*, 175 Wn.2d 549, 290 P.3d 99 (2012), in which we narrowly construed the term "transfer." The amendment allows the Department of Revenue (DOR) to tax qualified terminable interest property (QTIP) as part of a surviving spouse's estate. A QTIP trust is created by a deceased spouse and gives the surviving spouse a life interest in the income or use of trust property. *See* 26 U.S.C. § 2056(b)(7)(B)(i)-(ii). The advantage of QTIP trusts is that no estate tax is paid on the death of the first spouse; the property is taxed only upon the death of the surviving spouse.

In these consolidated cases, the estates of Hambleton and Macbride (collectively Estates) challenge the amendment on a variety of grounds. We reject the Estates' challenges and reverse summary judgment in *In re Estate of Hambleton*, No. 89419-1, and affirm the summary judgment in *In re Estate of Macbride*, No. 89500-7.

## Background

A brief discussion of the history of Washington's current estate tax law, the *Bracken* decision, 175 Wn.2d 549, and the facts of the consolidated cases, places this case in context.

### Washington Estate Tax Law Pre-Bracken

For many years, Washington did not have an independent estate tax. Instead, Washington participated in a federal tax sharing system, referred to as "pickup" taxes.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

*Bracken*, 175 Wn.2d at 557. Under the pickup tax system, the federal government became the principal estate tax collector in exchange for sharing with states a generous percentage of the amount collected. *Id.* In 2001, Congress passed legislation that gradually eliminated the pickup tax system. *Id.* at 558. Our legislature responded by "revis[ing] existing statutes to tie estate taxation to provisions of the Internal Revenue Code as they existed [under the former pickup tax system], with DOR continuing to collect the same amount of tax as before." *Id.* at 558-59. We invalidated the revisions and instructed the legislature to either create a stand-alone estate tax or remain under the former pickup tax system. *Id.* at 559; *Estate of Hemphill v. Dep't of Revenue*, 153 Wn.2d 544, 551, 105 P.3d 391 (2005).

In 2005, the legislature answered by enacting a stand-alone estate tax, the Estate and Transfer Tax Act (Act). LAWS OF 2005, ch. 516, § 1. The legislature modeled the stand-alone tax after the federal estate tax regime. *See Bracken*, 175 Wn.2d at 559. "It incorporates concepts and definitions from federal law and operates almost entirely in tandem with taxable estate and tax calculation and reporting for federal estate tax purposes." *Id.* For example, the "'Washington taxable estate' means the federal taxable estate, less: [specified deductions]." LAWS OF 2005, ch. 516, § 2(13).

Under federal law, Congress provides a deduction for QTIP trust assets. QTIP is property in a testamentary trust created by a deceased spouse for the benefit of the surviving spouse. The result of the deduction is that "[t]he spouse who dies first

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

controls the final disposition of the property, while allowing the surviving spouse to use the property or receive the income it generates, unreduced by front-end estate taxation." *Bracken*, 175 Wn.2d at 556. Typically, terminable interests, such as life estates, do not qualify for the marital tax deduction. *See id.* at 555. However, Congress created an exception for QTIP assets. The effect of the deduction is that the property is ultimately taxed, but the property is not taxed when the first spouse creates the life estate. *Id.* at 556. The transfer of property is taxed when the second spouse dies and the ultimate beneficiaries become present interest holders. *Id.*

Estate taxes are excise taxes. *West v. Okla. Tax Comm'n*, 334 U.S. 717, 727, 68 S. Ct. 1223, 92 L. Ed. 1676 (1948). Whether a tax is an excise tax or a direct tax is significant because the Washington State Constitution imposes a uniformity requirement on direct taxes, but the uniformity requirement does not apply to excise taxes. CONST. art. VII, § 1; *Dean v. Lehman*, 143 Wn.2d 12, 25-26, 18 P.3d 523 (2001). A tax is an "excise" or "transfer" tax if the government is taxing "a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property." *Fernandez v. Wiener*, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945).

The 2005 Act imposed a tax on "every transfer of property located in Washington" and applied prospectively to estates of decedents dying on or after May 17, 2005. LAWS OF 2005, ch. 516, §§ 3(1), 20. Therefore, a transfer (upon which the excise tax operates) must occur on or after May 17, 2005.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

Estate of Bracken

In *Bracken*, we held that DOR overstepped its authority by adopting regulations that taxed QTIP assets when the deceased spouse died before the effective date of the 2005 Act. *Bracken*, 175 Wn.2d at 554; *see* LAWS OF 2005, ch. 516, § 20. In *Bracken*, the deceased spouses made QTIP elections under federal law before Washington enacted its stand-alone estate tax and the surviving spouses died after the legislature passed the Act. *See* 175 Wn.2d at 556, 561-62. The estate in *Bracken* argued that the taxable transfer occurred when the first spouse died (before the Act came into effect), while DOR argued that a taxable transfer occurred when the second spouse died (after the Act came into effect). *See id.* at 561-63.

We interpreted "transfer" narrowly and reasoned that the only "transfer" occurred at the husbands' deaths when they created the QTIP trusts. *See id.* at 554, 563. Any transfers that occurred later upon the wives' deaths were fictional. *Id.* at 554. Therefore, DOR exceeded its authority under the Act, which requires a transfer, by creating regulations that allowed taxation of fictional transfers. *Id.* According to our interpretation in *Bracken*, the "real" transfers occurred before the 2005 estate law was enacted. DOR could not tax these transfers because the legislature declared that the Act was prospective only. *See* LAWS OF 2005, ch. 516, § 20. The court did not reach alleged constitutional issues because it construed the estate tax to apply only to real transfers. *See* 175 Wn.2d at 563.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

The concurring/dissenting opinion disagreed with the majority's narrow interpretation of "transfer." *See id.* at 576 (Madsen, C.J., concurring/dissenting). However, the concurring/dissenting opinion still agreed that the legislature did not intend to tax the QTIP, but for reasons differing from the majority. *Id.* at 594 (Madsen, C.J., concurring/dissenting) ("The 2006 regulations on their face and according to their plain language effectuate the obvious purpose of the legislature's determination to allow a state QTIP election: the surviving spouses' estates are not subject to state estate taxation on federal estate QTIP elections that did not benefit the first spouses' estates on any state estate tax returns by allowing a state marital deduction when the first spouses died."). The concurring/dissenting justices noted that the legislature could amend the statute if it intended a different result, so long as the amendments did not offend the constitution. *Id.* at 594-95.

The result of the *Bracken* decision was that the State could not tax the QTIP trusts created by spouses dying before the Act was enacted because the spouse did not make a *state* QTIP election. *See id.* at 554.

### 2013 Amendments

In 2013, the legislature responded to *Bracken* by amending the Act to tax QTIP assets upon the death of the surviving spouse. LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1. Disagreeing with *Bracken*'s narrow interpretation of the term "transfer," the legislature noted that under the federal estate tax code "transfer" is "construed broadly and extends to the 'shifting from one to another of any power or privilege incidental to

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

the ownership or enjoyment of property' that occurs at death." *Id.* § 1(3) (quoting

*Fernandez*, 326 U.S. at 352). The legislature also found that *Bracken*

> (a) Creates an inequity never intended by the legislature because unmarried individuals did not enjoy any similar opportunities to avoid or greatly reduce their potential Washington estate tax liability; and (b) may create disparate treatment between QTIP property and other property transferred between spouses that is eligible for the marital deduction.

*Id.* § 1(4). In response to its findings, the legislature broadened the meaning of

"transfer" to its "broadest possible meaning consistent with established United States

supreme court precedents . . . ." *Id.* § 1(5).

The legislature intended for the amendments to "apply both prospectively and

retroactively to all estates of decedents dying on or after May 17, 2005." *Id.* § 9.

However, the amendments do "not affect any final judgment, no longer subject to

appeal, entered by a court of competent jurisdiction before the effective date of this

section[, June 14, 2013]." *Id.* § 10.

The amendment modified the definition of "transfer." The definition of "transfer"

now reads, "'Transfer' means 'transfer' as used in section 2001 of the internal revenue

code *and includes any shifting upon death of the economic benefit in property or any*

*power or legal privilege incidental to the ownership or enjoyment of property. . . .*" *Id.*

§ 2(12) (italics indicate added language). Section 2001 of the Internal Revenue Code

(IRC) uses "transfer" in the following context: "A tax is hereby imposed on the transfer

of the taxable estate of every decedent who is a citizen or resident of the United

States." 26 U.S.C. § 2001(a).

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

The legislature also amended the definition of the "Washington taxable estate." The amended definition is, in relevant part, "the federal taxable estate *and includes, but is not limited to, the value of any property included in the gross estate under section 2044 of the internal revenue code, regardless of whether the decedent's interest in such property was acquired before May 17, 2005 . . . .*" LAWS OF 2013, 2d Spec. Sess., ch. 2, § 2(14) (italics indicate added language). Section 2044 requires that QTIP assets be included in the value of the surviving spouse's gross estate. *See* 26 U.S.C. § 2044(a).

The legislature's amendments clarified the intent of the legislature to include QTIP trusts created before 2005 in the surviving spouse's Washington taxable estate (if the surviving spouse died after the Act's effective date).

We now turn to the facts of the two cases before us.

Estate of Hambleton

Floyd Hambleton died on April 13, 2005, when there was no Washington estate tax in effect. His will left a testamentary trust for the benefit of his wife that qualified for the federal QTIP election. His estate made the federal QTIP election, but no such election existed under state law. His wife, Helen M. Hambleton, died on October 11, 2006. Helen's[1] federal taxable estate included the value of the QTIP trust property, but the estate did not include the property in its Washington taxable estate. DOR

---

[1] For the sake of clarity, we refer to the spouses by their first names. We intend no disrespect.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

disallowed a $4.7 million QTIP deduction and filed findings fixing the tax due. DOR is seeking an additional $1,184,989.16 in taxes. The estate filed objections to findings fixing the tax due and petitioned for declaratory and other relief. The parties agreed to stay the matter pending our decision in *Bracken*.

Following *Bracken*, the estate filed a motion for summary judgment, arguing that the Washington taxable estate could not include the federal QTIP election. The trial court granted summary judgment in favor of the estate, DOR appealed, and our court accepted certification under RAP 4.2.

Estate of Macbride

Thomas Macbride died on October 20, 1999, leaving a QTIP marital deduction trust for the lifetime benefit of his wife, Jessie C. Macbride. His estate made a federal election under 26 U.S.C. § 2056(b)(7). Jessie later died on October 21, 2007. The estate timely deposited funds with the State prior to filing either its federal or state estate tax returns. The estate paid taxes on the QTIP under protest and then sought a refund of $643,953, the taxes paid on the QTIP assets. The personal representatives brought this action for a refund, but the superior court granted summary judgment to DOR.

The estate filed a notice of appeal, seeking review of the order denying summary judgment in favor of petitioners, the order affirming agency action, and the order denying a motion for reconsideration. After this court accepted review of *Bracken* (but before the court set a date for oral argument), DOR moved to stay

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

review. The estate opposed the motion, and the Court of Appeals commissioner denied the motion. In the ruling, the commissioner explained that *Bracken* was not yet set for oral argument and the parties could seek to transfer the case to the Washington Supreme Court after briefing was complete. Thereafter, neither party sought transfer. After the *Bracken* argument was set, the commissioner asked the parties to brief whether the Court of Appeals should stay review pending resolution of *Bracken*. The record contains a response only from DOR. The commissioner stayed the appeal until our court resolved *Bracken*, whereupon we granted DOR's motion to transfer the case to this court and consolidate it with *Hambleton*.

### *Analysis*

The Estates challenge the 2013 amendments on a variety of grounds. The constitutional arguments focus on the separation of powers doctrine, due process clause (U.S. CONST. amend XIV), impairment of contracts clause (U.S. Const. art. I, § 10, cl. 2; WASH. CONST. art. I, § 23), and article VII, section 1 of the state constitution. The ex post facto clauses of the state and federal constitutions apply only to penalties and, therefore, do not apply to taxes. *See In re Pers. Restraint of Yates*, 180 Wn.2d 33, 51, 321 P.3d 1195 (2014). The delegates to Washington's constitutional convention of 1889 could have included an ex post facto clause applicable to civil cases; they did not. Hence, the Estates rely on other constitutional clauses. We analyze this case under principles applicable to civil cases, not criminal cases.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

As a general rule, our state legislature possesses plenary power to tax except as limited by the constitution. *Belas v. Kiga*, 135 Wn.2d 913, 919-20, 959 P.2d 1037 (1998). We presume that statutes are constitutional and place "the burden to show unconstitutionality . . . on the challenger." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

The arguments unrelated to the constitution include estoppel, the statute of limitations, and the existence of a final judgment. We review questions of law de novo, as well as orders granting summary judgment. *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 641, 310 P.3d 804 (2013); *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 483, 78 P.3d 1274 (2003).

*Separation of Powers*

We hold that the legislature did not intrude upon judicial power when it retroactively amended the Estate and Transfer Tax Act. The legislature was careful not to affect the rights of any parties to a prior judgment, reopen a case, or interfere with any judicial function. *See Lummi Indian Nation v. State*, 170 Wn.2d 247, 263, 241 P.3d 1220 (2010).

Our system of checks and balances incorporates the important concept of the separation of powers. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 503, 506, 198 P.3d 1021 (2009). The doctrine "preserves the constitutional division between the three branches of government, ensuring that the activity of one does not threaten or invade the prerogatives of another." *State v. Elmore*, 154 Wn. App. 885, 905, 228

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

P.3d 760 (2010). The legislature violates separation of powers principles when it infringes on a judicial function. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 143, 744 P.2d 1032, 750 P.2d 254 (1987). The function of the judiciary is to say what the law is, whereas the legislature's function is to set policy and draft and enact law. *Hale*, 165 Wn.2d at 506. It is important to note that although the separate and coequal branches fill different roles, the branches "must remain partially intertwined to maintain an effective system of checks and balances. The art of good government requires cooperation and flexibility among the branches." *Id.* at 507.

In *Hale*, the late Justice Tom Chambers wrote for a unanimous court when we rejected the argument that the legislature's retroactive amendment violated the separation of powers doctrine. *Id.* at 509-10. The facts grew out of *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006). In *McClarty*, the court interpreted the term "disability" in a way that limited the reach of Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW. *See Hale*, 165 Wn.2d at 501. Just as the legislature responded to *Bracken* by retroactively changing the law, the legislature changed the definition of "disability" announced by the court in *McClarty*. *Id.* at 501; *see* LAWS OF 2007, ch. 317, § 1. The amendment applied retroactively to all causes of actions occurring before the *McClarty* opinion was filed and prospectively to all causes of action occurring after the legislature passed the amendment. *Hale*, 165 Wn.2d at 502; LAWS OF 2007, ch. 317, § 1.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

The practical effects of the *McClarty* decision and the amendments on the parties in *Hale* were tangible. Hale was diagnosed with an anxiety disorder. *Hale*, 165 Wn.2d at 499. After we decided *McClarty*, the trial judge granted summary judgment in favor of Hale's employer, the Wellpinit school district, because Hale's ailment did not qualify as a disability. *See id.* Shortly thereafter, the legislature amended the WLAD to include a broad definition of "disability." *Id.* at 500. Hale filed a motion for reconsideration, which the trial court denied, reasoning that applying the amendment retroactively would violate the separation of powers doctrine. *Id.* The trial judge then certified the issue to our court. *Id.* We unanimously held that applying the amendment retroactively to Hale did not intrude upon judicial powers. *Id.* at 510.

Justice Chambers explained that although it is the court's obligation to determine and carry out the intent of the legislature, the legislature is occasionally disappointed with the court's interpretation. *Id.* at 509. By amending the statute, "the legislature acted wholly within its sphere of authority to make policy, to pass laws, and to amend laws already in effect." *Id.* He noted, "The legislature was careful not to reverse our decision in *McClarty* nor did the legislature interfere with any judicial function." *Id.* at 510. He praised the cooperation between the legislature and the court, stating:

> [The court's interpretation of the statute and the legislature's responsive amendment] should serve as a model of how two separate and independent branches of government can work together in harmony and in the spirit of reciprocal deference to the other's important role and function in the art of governing.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

*Id.*

The court held similarly in *Lummi Indian Nation*, 170 Wn.2d at 262-63. The facts in *Lummi Indian Nation* arose out of *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 957 P.2d 1241 (1998), and the legislature's subsequent amendment to municipal water law. *See Lummi Indian Nation*, 170 Wn.2d at 251. In *Theodoratus*, we held that under a then-existing statute, private water rights not did vest until the water was put to an "actual beneficial use." *Id.* at 255. This was a departure from the Department of Ecology's practice of issuing permits and certificates based upon a showing of need and capacity. *Id.* We cautioned that the opinion did not consider municipal water rights, which were treated differently under the law. *Id.* at 251, 255. The legislature responded to our opinion by amending the municipal water law to "explicitly define certain nongovernmental water suppliers as municipal and to make that definition retroactive." *Id.* at 251.

The issue before the court in *Lummi Indian Nation* was whether the amendment violated the separation of powers doctrine when its retroactive application narrowed the applicability of our holding. *Id.* at 260. Writing again for a unanimous court, Justice Chambers concluded that the retroactive amendments did not offend the separation of powers doctrine. *Id.* at 262-63. He relied heavily on *Hale*. *See id.* at 261-63.

> In *Hale*, we said that in order to decide whether the retroactive application of a statute violates separation of powers we must determine "whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another." . . . Retroactive legislation that interferes with vested rights established by judicial rulings interferes with a judicial function or results in manifest injustice or

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

threatens the independence, integrity, or prerogatives of the judicial branch may violate separation of powers.

However, in *Hale*, we also firmly rejected the contention that just because an appellate court's statutory interpretation relates back to the time the statute was originally adopted, any retroactive amendment of that statute violates separation of powers. Indeed, it is wholly within the sphere of authority of the legislative branch to make policy, to pass laws, and to amend laws already in effect.

*Id.* at 262 (citations omitted) (internal quotation marks omitted) (quoting *Hale*, 165 Wn.2d at 507). Applying these principles, the unanimous court found no separation of powers violation. *Id.* at 263. "The legislature made no attempt to apply the law to an existing set of facts, affect the rights of parties to the court's judgment, or interfere with any judicial function." *Id.* Its actions did not threaten the independence or integrity of the judiciary. *Id.*

We apply the principles and reasoning announced in *Hale* to the facts before us and hold that the retroactive amendment does not offend the separation of powers doctrine. The sequence of events here is very similar to those in *Hale*. In *Hale*, the employer's alleged discriminatory conduct occurred in 2002-03. *Hale*, 165 Wn.2d at 499. In 2006, Hale filed suit against the employer. *Id.* On July 6, 2006, we issued the *McClarty* decision, in which we interpreted "disability" narrowly. *See McClarty*, 157 Wn.2d at 228. The trial judge granted partial summary judgment against Hale because Hale was not disabled under the definition we adopted in *McClarty*. *Hale*, 165 Wn.2d at 499. The following month, the legislature rejected our interpretation of "disability," statutorily defined the term, and applied the amendment retroactively

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

(except for cases occurring between the dates when *McClarty* was announced and the amendment was enacted). *See id.* at 500.

Here, the estate of Hambleton objected to DOR's disallowing the QTIP deduction and petitioned for declaratory relief. After we issued *Bracken*, the trial court granted the estate summary judgment because there was no taxable transfer under our narrow interpretation of "transfer." The legislature then amended the definition to include QTIP transfers and applied the amendment retroactively. The sequence of events is identical to those in *Hale*.[2]

The court unequivocally allowed a retroactive amendment to change our interpretation of a statute in *Hale*. We will not overrule the rules announced in *Hale* and *Lummi Indian Nation*. Therefore, we hold the same today. The 2013 amendment does not offend the separation of powers doctrine. The legislature was careful to draft the law so that it "does not affect any final judgment, no longer subject to appeal, entered by a court of competent jurisdiction before the effective date of this section[, June 14, 2013]." LAWS OF 2013, 2d Spec. Sess., ch. 2, § 10. Like in *Hale* and *Lummi Indian Nation*, the legislature was threatening neither the independence nor the

---

[2] The sequence of events is slightly different in *Macbride*, but this does not change our analysis. The trial court granted DOR summary judgment well before the *Bracken* opinion was filed. The case was pending before the Court of Appeals when *Bracken* became law. And, the case was still pending when the legislature enacted the 2013 amendments. As in *Hale*, this case was pending before the courts when a decision by our court was released. The legislature retroactively changed the law. And, we apply the change in law to cases pending in the courts.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

integrity of the court, nor was it invading the court's prerogative. *See Hale*, 165 Wn.2d at 510; *Lummi Indian Nation*, 170 Wn.2d at 263.

It is additionally important to note that the legislature is not prohibited from passing amendments that directly impact cases pending in our court system.[3] *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 304, 174 P.3d 1142 (2007) ("Nor is the legislature prohibited from 'pass[ing] a law that directly impacts a case pending in Washington courts.' 'Litigation often brings to light latent ambiguities or unanswered questions that might not otherwise be apparent.' The legislature violates separation of powers principles by prescribing new rules to be applied to pending litigation only when doing so infringes on a judicial function by 'imped[ing] upon the court's right and duty to apply new law to the facts of this case,' 'dictat[ing] how the court should decide a factual issue,' or 'affect[ing] a final judgment.'" (alterations in original) (citations and internal quotation marks omitted) (quoting *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 625-26, 90 P.3d 659 (2004) and *United States v. Morton*, 467 U.S. 822, 835 n.21, 104 S. Ct. 2769, 81 L. Ed. 2d 680 (1984)). When a legislature makes clear that an act is intended to apply retroactively, "an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut*

---

[3] The Estates are really arguing this appeal as a matter of fairness. None of their constitutional arguments dictate that they get the relief they seek. The decision to retroactively amend the statute was a policy decision, properly in the sphere of the legislature.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

*v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995).

In *Plaut*, the Court reasoned:

> [The judiciary is a] *department* composed of "inferior Courts" and "one supreme Court." Within that hierarchy, the decision of an inferior court is not (unless the time for appeal has expired) the final word of the department as a whole. It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court at every level, must "decide according to existing laws."

*Id.* at 227 (quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 109, 2 L. Ed. 49 (1801)).

The legislature did not violate the separation of powers doctrine when it passed the retroactive amendment to the Act.

### Due Process

Applying a rational basis standard, the 2013 amendment's retroactive application does not violate due process of law. *See United States v. Carlton*, 512 U.S. 26, 30-31, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994). The legislature has a legitimate purpose for the retroactive amendment, and the period of retroactivity is rationally related to that purpose. *Id.*

States must not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1; CONST. art. I, § 3. This constitutional protection guards against arbitrary and capricious government action. *Amunrud*, 158 Wn.2d at 219. Our analysis follows that of the federal constitution because the state constitution does not afford broader due process protection than

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

the Fourteenth Amendment to the United States Constitution. *See In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001); *State v. Morgan*, 163 Wn. App. 341, 352, 261 P.3d 167 (2011). We use a rational basis standard for examining the 2013 amendment:

> The due process standard to be applied to tax statutes with retroactive effect . . . is the same as that generally applicable to retroactive economic legislation:
>
> > "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches . . . .
> >
> > "To be sure, . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects. . . . The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former . . . . *But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.*"

*Carlton*, 512 U.S. at 30-31 (emphasis added) (most alterations in original) (internal quotation marks omitted) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729-30, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)); *see W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 602-03, 973 P.2d 1011 (1999) (Our court applied the same standard when examining the retroactive application of a business and occupation tax.).

Applying the rational basis standard, the Court in *Carlton* held that the retroactive application of revisions to the IRC did not violate the due process clause. *Carlton*, 512 U.S. at 28-29. As background, the IRC created a deduction for "half the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

proceeds of 'any sale of employer securities by the executor of an estate' to 'an employee stock ownership plan.'" *Id.* at 28 (quoting former 26 U.S.C. § 2057(b) (1982 ed. & Supp. IV)). In order to receive the deduction, the sale of securities had to take place before an estate filed its tax return. *Id.* The estate in *Carlton* bought and sold the securities for the purpose of taking advantage of the § 2057 deduction. *Id.* The transaction reduced the taxable estate by $2,501,161. *Id.* One week after the estate took advantage of the deduction, the Internal Revenue Service (IRS) announced that it would treat the deductions as available only to "estates of decedents who owned the securities in question immediately before death." *Id.* at 29. Almost a year later, Congress amended the statute to conform to the IRS' policy. The amendment was to be applied retroactively, "as if it had been contained in the statute as originally enacted" a year prior. *Id.* The IRS disallowed the estate's deduction, and the estate in *Carlton* argued that this violated its due process rights. *Id.* The Court found no due process violation. *Id.* at 32-33.

First, there was a legitimate purpose. Congress enacted the amendment to correct a mistake that "would have created a significant and unanticipated revenue loss." *Id.* at 32. This purpose was neither arbitrary nor illegitimate. *Id.* Second, the means were rationally related to the purpose. *Id.* at 32-33. The period of retroactivity extended slightly longer than one year. *Id.* at 33. The amendments were introduced in Congress shortly after the problem was discovered, and it took time to pass national legislation. *See id.* at 32-33. In reaching its conclusion in *Carlton*, the Court noted

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

that it "repeatedly has upheld retroactive tax legislation against a due process challenge." *Id.* at 30.

Courts have upheld retroactive periods that are short and limited to that required by the practicalities of producing legislation and have upheld longer retroactive periods as well. *See United States v. Darusmont*, 449 U.S. 292, 297, 101 S. Ct. 549, 66 L. Ed. 513 (1981); *W.R. Grace*, 137 Wn.2d at 586-87; *Mont. Rail Link, Inc. v. United States*, 76 F.3d 991, 993-94 (9th Cir. 1996); *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue*, 221 Ariz. 123, 125-29, 211 P.3d 1 (Ct. App. 2008). Our court found that a retroactive period spanning more than seven years did not violate the due process clause in *W.R. Grace.* 137 Wn.2d at 586-87.

The facts in *W.R. Grace* involved the legislature's amending an unconstitutional business and occupation tax. The amendment limited taxpayer relief to a tax credit and applied retroactively. *Id.* at 586. A challenger sought relief from taxes it paid seven years before the amendment was enacted. *See id.* at 587. We found that there was a "rational legislative purpose" and the "retroactive application of the . . . remedial legislation [did] not offend constitutional principles." *Id.* at 603.

Similarly, an amendment to the Railroad Retirement Tax Act, 26 U.S.C. § 3231, which applied retroactively for seven years, passed constitutional muster because it served a legitimate purpose (i.e., preventing a loss of government revenue and protecting employees who relied on receiving higher retirement benefits) and the period of retroactivity bore "a rational relation to [the] underlying legislative purpose."

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

*Mont. Rail Link, Inc.*, 76 F.3d at 993-94. "A shorter period of retroactivity would have been arbitrary and irrational." *Id.* at 994.[4]

Here, the retroactive application of the 2013 amendments meets the rational basis standard. *See Carlton*, 512 U.S. at 30-31. As stated in § 1 of the amendment, the purpose is to "restore parity between married couples and unmarried individuals [by not allowing married individuals to avoid or greatly reduce their potential Washington estate tax liability], restore parity between QTIP property and other property eligible for the marital deduction, and prevent the adverse fiscal impacts of the Bracken decision . . . ." LAWS OF 2013, 2d Sp. Sess., ch. 2, § 1(5). Like the legitimate purpose in *Carlton*, the purpose of the 2013 amendment is largely economic. *Carlton*, 512 U.S. at 32. According to the DOR fiscal note, the legislation was anticipated to

> increase revenues to the education legacy trust account by an estimated $118.4 million in Fiscal Year 2014. The estimated revenue increase reflects the retroactive clarifications of the definitions of "transfer" and "Washington taxable estate" to conform to the Department's interpretation, thereby eliminating any refund claims resulting from the recent court decision, other than for the Estate of Bracken. It also reflects other changes made to existing estate tax law.

---

[4] The Estates' briefs suggest that *Carlton* creates a threshold on the period of retroactivity. Our court has allowed periods of retroactivity extending beyond one year, as have other jurisdictions. *W.R. Grace*, 137 Wn.2d at 586-87; *Mont. Rail Link, Inc.*, 76 F.3d at 993-94; *Enter. Leasing Co.*, 221 Ariz. At 127 ("We do not interpret our precedents as creating a talismanic cutoff of one year.").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

Agency Fiscal Note to Engrossed H.B. 2075, at 3, 63d Leg., 2d Spec. Sess. (Wash. 2013) (prepared by DOR). Preventing unanticipated and significant fiscal shortfall is a legitimate purpose for amending tax legislation. *Carlton*, 512 U.S. at 32.

The period of retroactivity is also rationally related to preventing the fiscal shortfall. It provides the necessary funds, and the length of retroactivity is directly linked with the purpose of the amendment, which is to remedy the effects of *Bracken*. The amendment applies to all estates since our State enacted the Act. This period of retroactivity is not arbitrary. However, any period less than eight years would be arbitrary. It would allow some estates to escape the tax while similarly situated estates would be subject to it. Additionally, the eight-year period of retroactivity is not far outside other retroactive periods that courts have accepted. *See W.R. Grace*, 137 Wn.2d at 586-87; *Mont. Rail Link, Inc.*, 76 F.3d 993-94; *Enter. Leasing Co.*, 211 P.3d 1. Therefore, the retroactive period meets the due process clause's rational basis test.

The Estates make two failing arguments regarding the due process clause. First, the Estates argue that the 2013 amendments impose a wholly new tax, making the *Carlton* standard inapplicable. The Ninth Circuit rejected this argument in *Quarty v. United States*, 170 F.3d 961, 966-67 (9th Cir. 1999). The parties were attempting avoid the application of *Carlton* and, instead, invoke precedent from the 1920s. *Id.* at 966. The 1920s cases considered retroactive application of the first gift tax, which violated due process. *Id.* The Ninth Circuit quoted *Carlton*:

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

"Those cases were decided during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.' To the extent that their authority survives, they do not control here. *Blodgett* and *Untermyer*, which involved the Nation's first gift tax, essentially have been limited to situations involving 'the creation of a wholly new tax,' and their 'authority is of limited value in assessing the constitutionality of subsequent amendments that bring about certain changes in the operation of the tax laws.'"

*Quarty*, 170 F.3d at 966-67 (citations omitted) (quoting *Carlton*, 512 U.S. at 34 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028, 10 L. Ed. 2d 93 (1963); *United States v. Hemme*, 476 U.S. 558, 568, 106 S. Ct. 2071, 90 L. Ed. 2d 538 (1986))). The court concluded, "[A] new tax is imposed only when the taxpayer has 'no reason to suppose that any transactions of the sort will be taxed at all.'" *Id.* at 967 (quoting *Darusmont*, 449 U.S. at 298, 300).

The 2013 amendments did not create a wholly new tax. Washington has long received revenue from estate taxes, and the taxpayers had "reason to suppose" that the state would tax shifting interests in assets upon death. *See id.* Therefore, *Carlton*'s rational basis test applies. *See id.*

The Estates' second unsuccessful argument is that applying the amendments retroactively is unconstitutional because it impairs a vested right acquired under existing law. Appellant's Suppl. Br. at 27 ("the existing law here being, in effect, no estate tax at all, or rather the 'pickup' tax Washington instituted in 1981"). "A statute may not be applied retroactively to infringe a vested right." *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 810, 272 P.3d 209 (2012). We recently stated:

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

This notion finds root in the due process clauses of the Fifth and Fourteenth Amendments. While due process generally does not prevent new laws from going into effect, it does prohibit changes to the law that retroactively affect rights which vested under the prior law. We have said that

> [a] vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.

*Id.* at 811 (alteration in original) (citations omitted) (quoting *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975)). For example, we declined to apply an amendment retroactively when the legislature was silent as to retroactivity and a party had a vested interest. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 463, 832 P.2d 1303 (1992).

Here, DOR correctly notes that the Estates do not explain what vested right the remainder beneficiaries held in the QTIP that was impacted by the amendment. The remaindermen had vested rights in the trust property upon the death of the first spouse. This interest became a vested present interest upon the death of the surviving spouse, and the legislature is taxing the shift in interest. The estate tax does not deprive the remaindermen of their interest in the property or change the nature of their interest. It simply taxes the transfer of assets.

On a related note, in *Carlton*, the Supreme Court stated,

> Tax legislation is not a promise, and a tax payer has no vested right in the Internal Revenue Code. Justice Stone explained in *Welch v. Henry*, 305 U.S. [134, 146-47, 59 S. Ct. 121, 83 L. Ed. 87 (1938):]
>
> > "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process . . . ."

*Carlton*, 512 U.S. at 33 (alteration in original). Similarly, the Estates here do not have a vested right in Washington's pre-2005 pickup tax scheme.

There is no due process violation because the 2013 amendments serve a legitimate purpose and the period of retroactivity is rationally related to that purpose.

*Impairment of Contract*

The 2013 amendments do not violate the impairment of contracts clause because the amendments are not a substantial impairment to a contract and the legislative amendment was reasonably necessary.

Both the federal constitution and Washington State Constitution protect citizens from state laws that impair the obligation of contracts. CONST. art. I, § 23; U.S. CONST. art. I, § 10, cl. 1; *see Wash. Fed'n of State Emps. v. State*, 101 Wn.2d 536, 539, 682 P.2d 869 (1984) ("[Const. art. I, § 23] is substantially the same as U.S. Const. art. 1, § 10 and is to be given the same effect."). Like many other constitutional rights, the clause's protections are not absolute; "its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed.2d 569 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434, 54 S. Ct. 231, 78 L. Ed. 413 (1934)).

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

As a threshold matter, we inquire into "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* at 411 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978)). "The impaired relationship must be a 'contract' in the usual sense of the word 'signifying an agreement of two or more minds, upon sufficient consideration, to do or not to do certain acts.'" *Haberman*, 109 Wn.2d at 145 (quoting *Crane v. Hahlo*, 258 U.S. 142, 146, 42 S. Ct. 214, 66 L. Ed. 514 (1922)). However, in 1931, the United States Supreme Court applied the contracts clause to a trust deed. *Coolidge v. Long*, 282 U.S. 582, 595, 51 S. Ct. 306, 75 L. Ed. 562 (1931). "A contract is impaired by a statute which alters its terms, imposes new conditions or lessens its value." *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 404, 869 P.2d 28 (1994). We look for a substantial impairment. *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 653, 854 P.2d 23 (1993). An impairment may be substantial if a party relied on the supplanted clause. *Caritas*, 123 Wn.2d at 405. However, "a party who enters into a contract regarding an activity 'already regulated in the particular [way] to which he now objects' is deemed to have contracted 'subject to further legislation upon the same topic'." *Margola Assocs.*, 121 Wn.2d at 653 (quoting *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38, 60 S .Ct. 792, 84 L. Ed. 1061 (1940)).

If the threshold is met and the contract is between private parties, we determine whether the enactment was reasonably necessary. *Carlstrom v. State*, 103 Wn.2d 391, 394, 694 P.2d 1 (1985). "The contracts clause does not prohibit the states from

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

repealing or amending statutes generally, or from enacting legislation with retroactive effects." *Haberman*, 109 Wn.2d at 145.

Here, the threshold inquiry is not met and the amendments were reasonably necessary. There was no substantial impairment of the trust because it was reasonable for the Estates to expect that the estate tax law would change. *See Coolidge*, 282 U.S. at 595. Additionally, the 2013 amendments meet the "reasonably necessary" standard for contracts where the State is not a party. The purpose of the amendments is to provide revenue to fund education. *See* LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1(1). "'[T]he State . . . has an affirmative paramount duty to make ample provision for funding the 'basic education' . . . .'" *McCleary v. State*, 173 Wn.2d 477, 517, 269 P.3d 227 (2012) (second alteration in original) (quoting *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 520, 585 P.2d 71 (1978)). Imposing a tax on the Estates prevented the fiscal shortfall created by *Bracken*. Therefore, the 2013 amendments do not unconstitutionally impair contracts.

*Article VII, Section 1*

We hold that the amendments do not violate article VII, section 1 of the Washington State Constitution. Article VII, section 1 provides, "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only." This uniformity requirement applies only to property tax and not excise tax. *Dean*, 143 Wn.2d at 25-26 ("Excise taxes also fall beyond the breadth of the uniformity

28

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

requirement."). Because the estate tax is an excise tax, the 2013 amendments do not violate article VII, section 1 of the Washington Constitution.

A tax is an "excise" or "transfer" tax if the government is taxing "a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property." *Fernandez*, 326 U.S. at 352. An estate tax is an excise tax because the tax is "not levied on the property of which an estate is composed. Rather it is imposed upon the shifting of economic benefits and the privilege of transmitting or receiving such benefits." *West*, 334 U.S. at 727.

Transfers are broadly construed at death under federal estate tax law—the system upon which the Act is based. For example, the United States Supreme Court stated:

> [T]he [federal] estate tax as originally devised and constitutionally supported was a tax upon transfers. But the power of Congress to impose death taxes is not limited to the taxation of transfers at death. It extends to the creation, exercise, acquisition, or relinquishment of any power or legal privilege which is incident to the ownership of property, and when any of these is occasioned by death, it may as readily be the subject of the federal tax as the transfer of the property at death.

*Fernandez*, 326 U.S. at 352 (citations omitted). The First Circuit Court of Appeals has stated that the estate tax is not "in a strict sense a tax upon a 'transfer' of the property by the death of the decedent. It is an excise tax upon the happening of an event, namely, death, where the death brings about certain described changes in legal relationships affecting property." *Chickering v. Comm'r of Internal Revenue*, 118 F.2d 254, 257-58 (1st Cir. 1941).

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Following these general principles, taxing QTIP assets upon the death of a surviving spouse qualifies as an excise tax. The surviving spouse had the economic benefit of using the income from QTIP assets during his or her life. And, upon the surviving spouse's death, the remainder beneficiaries of the trust gained a present interest in the assets and income. The death of the surviving spouse brought about "changes in legal relationships affecting property." *Id.* Therefore, the Estate and Transfer Tax Act is an excise tax and not subject to article VII, section 1.

*Equitable & Collateral Estoppel*

DOR is not equitably estopped from applying the 2013 amendments to the estate of Macbride.[5] The elements of equitable estoppel are:

> (1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.

---

[5] Neither of the Estates raises the issue of judicial estoppel. "'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). Three factors guide judicial estoppel: "(1) whether 'a party's later position' is 'clearly inconsistent with its earlier position'; (2) whether 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Arkison*, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). Judicial estoppel is not applicable. The parties have not taken inconsistent positions, nor have they misled the court. It was the legislature that changed the law that applies to the cases.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

*Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993). Assertions of equitable estoppel against the government are not favored; parties must demonstrate that equitable estoppel is necessary to prevent a manifest injustice and that the exercise of governmental functions will not be impaired as a result of the estoppel. *Id.* Generally, we "should be most reluctant to find the government equitably estopped when public revenues are involved." *Id.* at 744.

The estate of Macbride bases its estoppel argument on the fact that had it transferred its appeal to our court alongside *Bracken*, the 2013 amendment would not apply to it. However, the estate fails to prove the second element with clear, cogent, and convincing evidence, in that the estate failed to prove reliance on DOR's statements. *See City of Seattle v. St. John*, 166 Wn.2d 941, 948-49, 215 P.3d 194 (2009).

DOR moved to stay proceedings pending our decision in *Bracken*. It reasoned that the current case and *Bracken* involved the same legal issues and that our decision in *Bracken* would likely resolve the estate of Macbride's appeal and make any further proceedings moot. Even if the motion is a statement or assertion, the estate did not rely upon it. Instead, the estate filed a response that opposed DOR's motion to stay. Given these facts, equitable estoppel does not apply.

Additionally, collateral estoppel does not prevent DOR from relitigating issues. Before a court will invoke collateral estoppel,

> the party asserting the doctrine must prove: (1) the issue decided in the
> prior adjudication is identical with the one presented in the second action;

31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

(2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998). However, an issue may not be precluded if "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(b) (1982). Here, the applicable law has been amended. Therefore, review is warranted to take account of this change. *See id.*

### Statute of Limitations

The statute of limitations does not prevent the 2013 amendments from applying to the estate of Hambleton. Under RCW 83.100.095(3), "[n]o assessment or correction of an assessment for additional taxes . . . may be made by the department more than four years after the close of the calendar year in which a Washington return is due . . . ." DOR issued its assessment of taxes due on November 18, 2008, only two years after Helen Hambleton passed away. In the assessment, the amount owing was "attributable to the [e]state's exclusion of . . . '§2044 property' from the Washington taxable estate." Clerk's Papers at 17-18. The estate filed its Washington State estate tax return on January 11, 2008. Therefore, DOR issued its assessment well within the four year statute of limitations. *See* RCW 83.100.095(3). The estate offers no support as to why a new or corrected assessment is needed. The assessment has always included QTIP trust property. The estate has had notice of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

the amount due since 2008. Therefore, the 2013 amendments are not barred by the statute of limitations. *See* RCW 83.100.095(3).

*Final Judgment*

The estate of Hambleton argues that the trial court's ruling was final at the time the legislature enacted the 2013 amendment, so the amendment should not apply to it. *See* LAWS OF 2013, 2d Spec. Sess., ch. 2, § 10 ("[The] act does not affect any final judgment, no longer subject to appeal, entered by a court of competent jurisdiction before the effective date of this section."). We disagree. The estate arrives at this conclusion by arguing that DOR had no basis in law upon which to appeal the order granting summary judgment because DOR appealed the order before the amendments were enacted. This reasoning is unpersuasive.

Generally, "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut*, 514 U.S. at 226. Therefore, despite the existence of a "final" trial court ruling, retroactive amendments may apply to cases pending on appeal.

A party may appeal final trial court judgments. RAP 2.2(a)(1). However, parties may not frivolously appeal or appeal simply for purposes of delay. RAP 18.9(c). Appellate courts will, on motion from the opposing party, dismiss frivolous appeals and appeals brought for purposes of delay. RAP 18.9(c).

33

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

Here, the trial court entered its order granting summary judgment on April 19, 2013 and DOR filed a notice of appeal on May 16, 2013. The estate of Hambleton did not move under RAP 18.9(c) to dismiss the appeal, and the appeal was still pending when the legislature enacted the 2013 amendment. Therefore, the retroactive amendment applies to the case.

### *Conclusion*

No barriers prohibit the retroactive application of the 2013 amendment to the Estates of Hambleton and Macbride. No genuine issues of material fact exist in the cases, and judgment may be entered as a matter of law.

We reverse the order granting summary judgment to the estate of Hambleton, and remand for the entry of judgment in accordance with this opinion. We affirm the denial of summary judgment to the estate of Macbride and affirm the order affirming agency action and granting judgment as a matter of law to DOR.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Estate of Hambleton*, No. 89419-1
consolidated with
*In re Estate of Macbride*, No. 89500-7

Wiggins, J.

WE CONCUR.

Madsen, C.J.

Stephens, J.

Johnson, J.

González, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, J.

Dwyer, J.P.T.