FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 12

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SQUAXIN ISLAND TRIBE, | No. 42710-9-II |
| Respondent, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, a State agency; TED STURDEVANT, Director of the Washington Department of Ecology, in his official capacity; CHRISTINE GREGOIRE, Governor of the State of Washington, in her official capacity; and MASON COUNTY, a municipal corporation political subdivision of the State of Washington, | PUBLISHED OPINION |
| Appellants. | |

FORBES, J.[*]— The Washington State Department of Ecology (Ecology) appeals from the superior court's order concluding that Ecology's denial of the Squaxin Island Tribe (Tribe)'s rulemaking petition was arbitrary and capricious, and requiring Ecology to engage in rulemaking to amend watershed management rules to protect minimum instream flows of Johns Creek in Mason County as requested in the Tribe's petition. The Tribe contends that Ecology's response to its rulemaking petition failed to specifically address the Tribe's concerns as required by RCW 34.05.330(1) and that Ecology's decision not to engage in rulemaking due to budget concerns,

---

[*] Judge Jennifer Forbes is serving as judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

other priorities, and lack of technical information was arbitrary and capricious. We disagree and hold that (1) Ecology's explanation of its refusal to initiate rulemaking satisfied RCW 34.05.330 and (2) Ecology's decision not to engage in rulemaking was reasoned and supported by the record and, thus, it was not arbitrary and capricious. Accordingly, we reverse the contrary decision of the superior court.

The Tribe also attempts to challenge the validity of several existing watershed management rules. But the trial court did not reach the rule challenges, and they are not properly before us for review.

## FACTS

The Tribe's petition focuses on Johns Creek,[1] which is in the Kennedy-Goldsborough Water Resource Inventory Area (WRIA 14).[2] In 1984, Ecology adopted a water management rule for WRIA 14, chapter 173-514 WAC, which set minimum instream flows for Johns Creek and other creeks. WAC 173-514-030(2). Ecology specifically considered the needs of anadromous fish in setting the instream flows. It also seasonally closed Johns Creek to all consumptive uses to protect early chum salmon runs. WAC 173-514-040. The Johns Creek instream flows became a surface water right with a priority date of 1984.

Despite the protections provided by chapter 173-514 WAC, Johns Creek "flows have continued to decline so that adopted instream flow levels are rarely met mid-February through September." Agency Record Part B (ARPB) at 219. Since 1984, there has been considerable development pressure on the Johns Creek basin. Ecology estimates that more than 280 new

---

[1] Johns Creek is in the Tribe's usual and accustomed fishing area. The Tribe does not have adjudicated water rights in Johns Creek.

[2] The State is divided into 62 WRIAs. WAC 173-500-040.

permit-exempt wells have been drilled since that time.[3] Johns Creek is fed by ground water, which contributes cold water that is critical to anadromous fish habitat. Reduced flows and higher temperatures in Johns Creek are harming its small and fragile summer chum population.

The Tribe alleges that junior wells in the basin are affecting or interfering with senior surface water rights by capturing water that is otherwise destined for Johns Creek. Ecology recognizes that the "corresponding drop in stream flows in Johns Creek and increased ground water use suggests a likely correlation." [4] ARPB at 225. Both Ecology and the Tribe agree that specific hydrogeological data and models are needed for informed decisions about managing and allocating water use and protecting surface flows in the Johns Creek basin. The cost of such a study has been estimated at $300,000. Once funding is obtained, it will take at least two years to perform the study and to make its results useable to decision makers. Ecology, the Tribe, and Mason County have unsuccessfully sought funding for this study at various times.

In December 2009, the Tribe filed a petition requesting that Ecology initiate rulemaking

---

[3] Permit-exempt wells are legislatively exempt from the public ground waters code's permitting requirement. RCW 90.44.050. But they are subject to the priority system; thus, permit-exempt wells may not impair senior surface water rights such as instream flows. RCW 90.44.030. *See also Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, No. 87672-0, 2013 WL 5689464, at *10 (Wash. Oct. 3, 2013) ("[A] minimum flow or level cannot impair existing water rights and a later application for a water permit cannot be approved if the water right sought would impair the minimum flow or level.").

[4] In 2008, a hydrogeologist for Ecology compared two sets of data collected 50 years apart and recognized that "preliminarily, there are several indications that exempt well use has, in fact, impaired a senior water right in the form of the [minimum instream flow] established for Johns Creek." ARPB at 81. But the hydrogeologist cautioned that there are "a lot of pitfalls associated with extrapolating too much from so few years['] worth of data." ARPB at 81.

to revise the WRIA 14 water management rule.[5] The Tribe requested that Ecology promulgate a rule withdrawing Johns Creek basin from new water appropriations pending a study of water availability in the basin. The Tribe also requested various revisions to existing rules.[6]

Ecology denied the Tribe's petition, explaining that (1) Ecology staff reductions and potential new cuts were already limiting the agency's ability to do comprehensive work on instream flow rule development across the state and (2) additional information regarding the hydrology and hydrogeology of Johns Creek basin was needed before a comprehensive rule amendment could be undertaken. As an alternative to granting the petition, Ecology agreed to seek funding to study the Johns Creek basin and to direct Mason County to limit ground water withdrawals for new residential developments to in-house domestic use of water.[7]

---

[5] The Tribe had filed a similar petition in April 2008. Ecology denied the 2008 petition and adopted an "alternative path" that consisted of various tasks including: securing funding for a study, clarifying permit exemptions, and working with Mason County and the port of Shelton on conservation and decision-making standards. ARPB at 90. Due to Ecology's lack of follow through with the alternative path, the Tribe filed its December 2009 petition.

[6] Specifically, the Tribe requested that Ecology amend or promulgate rules extending the seasonal closure for new consumptive uses of Johns Creek to year-round closure, withdrawing from appropriation all waters of the Johns Creek basin, adopting a map delineating the vicinity of Johns Creek for purposes of closure and withdrawal of the basin, prohibiting new surface water diversions and ground water withdrawals (whether or not permit-exempt) that could impair established instream flows, curtailing existing junior surface water diversion and ground water withdrawals that cumulatively or individually impair senior instream flows, and revising other provisions inconsistent with the law.

[7] The Tribe appealed Ecology's denial of its rulemaking petition to the governor under RCW 34.05.330(3), but the governor denied the appeal. By separate letter to Ecology's director, the governor directed Ecology to take certain actions to protect Johns Creek from flow degradation. The governor directed Ecology to ensure the port of Shelton does not exceed its legally authorized water rights, secure funding for the needed ground water study, inform the public in the basin about flow-related problems in Johns Creek, reopen communication with Mason County to develop and implement a strategy to protect Johns Creek flows, and meet with the Tribe to discuss instream flow rulemaking priorities.

No. 42710-9-II

The Tribe petitioned for judicial review of Ecology's denial of its rulemaking petition. The Tribe also sought a declaration that certain existing WRIA 14 water management rules were invalid. The superior court ruled that

> Ecology had a mandatory duty under RCW 34.05.330(1) to specifically address the concerns raised by the Tribe in its rulemaking petition. Ecology's response to the petition failed to meet its mandatory duty and, as a result, Ecology's denial of the Tribe's petition was arbitrary and capricious.

Clerk's Papers (CP) at 352. The superior court remanded the matter to Ecology and ordered it to "engage in rulemaking as requested in the Tribe's 2009 petition." CP at 352.

Ecology timely appeals the superior court's decision. We sit in the same position as the superior court and directly review the agency action challenged by the Tribe. *Nw. Sportfishing Indus. Ass'n v. Dep't of Ecology*, 172 Wn. App. 72, 90, 288 P.3d 677 (2012).

ANALYSIS

I.  DENIAL OF RULEMAKING PETITION

Under the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, any person may petition an agency to adopt, amend, or repeal a rule. RCW 34.05.330(1).

> Within sixty days after submission of a petition, the agency shall either (a) deny the petition in writing, stating (i) its *reasons for the denial, specifically addressing the concerns raised by the petitioner*, and, where appropriate, (ii) the alternative means by which it will address the concerns raised by the petitioner, or (b) initiate rule-making proceedings.

RCW 34.05.330(1) (emphasis added).

An agency's decision to deny a rulemaking petition is subject to judicial review as other agency action under RCW 34.05.570(4). *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 491-92, 39 P.3d 961 (2002). On review, we sit in the same position as the superior court and apply the APA standards directly to the agency's administrative record. *Wash. Indep. Tel. Ass'n v.*

5

*Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003). We will grant relief only if we determine that the agency action is unconstitutional, outside the agency's authority, arbitrary or capricious, or taken by unauthorized persons. RCW 34.05.570(4)(c). The party challenging the agency action bears the burden of demonstrating the invalidity of the action. RCW 34.05.570(1)(a).

A. Ecology's Response Specifically Addressed the Tribe's Concerns

The Tribe contends that Ecology's written denial of its rulemaking petition does not specifically address the Tribe's concerns as required by RCW 34.05.330(1). Ecology argues that the Tribe misconstrues RCW 34.05.330(1) to require Ecology to redress or remedy the substance of the Tribe's concerns. We agree with Ecology and hold that its response to the Tribe's petition satisfied RCW 34.05.330(1).

The purpose of requiring an agency to provide reasons for rejecting a rulemaking request is to give notice to interested parties and enable a reviewing court to determine whether challenged agency action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See WHHT, Inc. v. F.C.C.*, 656 F.2d 807, 813 & n.10, 814, 819-20 (D.C. Cir. 1981) (discussing similar requirements under the federal APA—prompt notice and a brief statement of the grounds for denial). We evaluate the sufficiency of Ecology's explanation under RCW 34.05.330(1) in light of its purpose to facilitate judicial review of whether the agency's decision not to engage in rulemaking was arbitrary and capricious.

Here, the Tribe argues that budget constraints, need for additional study, and a directive to Mason County does not address the Tribe's concern that unsound decisions in the basin are causing senior instream flows not to be met in Johns Creek. Although Ecology's response does not resolve the Tribe's concerns about the low flows in Johns Creek, it does "specifically

6

address" them. Despite the Tribe's challenge to Ecology's explanation as inadequate under the APA, there is no real question that Ecology's explanation gave the Tribe notice of its reasons for denial and that the explanation did not frustrate judicial review of the agency decision.

The Tribe's true grievance is with the merits of Ecology's decision. The Tribe prefers to withdraw the Johns Creek basin from new water appropriations pending sufficient information for sound decision making, and Ecology prefers to wait until sufficient information is available to guide the agency. But we must reject the Tribe's challenge to Ecology's decision unless it is arbitrary and capricious. The Tribe cannot transform the agency's mandatory requirement to explain its denial into a mechanism to review the substance of the agency's discretionary decision.

B. Ecology's Refusal To Initiate Rulemaking Is Not Arbitrary and Capricious

Because Ecology's explanation is adequate, we evaluate its decision to deny the rulemaking petition under the standard of review provided by the APA. The Tribe contends that Ecology's refusal to engage in rulemaking to promulgate a rule withdrawing the basin from further water appropriation and to amend various other rule provisions to comprehensively address ground water appropriations was arbitrary and capricious. Ecology argues that its decision was well-reasoned and made with due regard to the facts and circumstances. We agree with Ecology.

Arbitrary or capricious agency action is willful and unreasoning action taken without regard to the attending facts or circumstances. *Wash. Indep. Tel. Ass'n*, 149 Wn.2d at 26. "[N]either the existence of contradictory evidence nor the possibility of deriving conflicting conclusions from the evidence renders an agency decision arbitrary and capricious." *Rios*, 145 Wn.2d at 504. We give due deference to the specialized knowledge and expertise of an

administrative agency. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 595, 90 P.3d 659 (2004). And we avoid exercising discretion that our legislature entrusted to the agency. *Port of Seattle*, 151 Wn.2d at 568. We review the record to determine whether the agency reached its decision "'through a process of reason, *not whether the result was itself reasonable in the judgment of the court.*'" *Rios*, 145 Wn.2d at 501 (internal quotation marks omitted) (quoting *Aviation W. Corp. v. Dep't of Labor & Indus.*, 138 Wn.2d 413, 432, 980 P.2d 701 (1999)). Accordingly, an agency has wide discretion in deciding to forgo rulemaking. *Rios*, 145 Wn.2d at 507.

Before issuing its decision, Ecology held a meeting with representatives from the Tribe and met with Mason County commissioners. Ecology also held a stakeholder and public meeting to discuss the Tribe's petition and concerns and the decision Ecology faced. Ecology devised six options, including closing or withdrawing the basin, limiting new uses, and seeking funding for a study.[8] Ecology's regional director specifically noted that the agency should closely consider how the basin closure request relates to other water resource issues in the state, particularly in Kittitas County.[9]

---

[8] Ecology considered the following six options: (1) Close the basin by amending the existing instream flow rule; (2) issue an administrative order to Mason County finding that water is not available for outdoor use and directing the county to allow indoor water use only for new residential building permits unless there is mitigation for outdoor use; (3) issue a general administrative order to all parties with an interest in WRIA 14 as presented in the second option; (4) create a memorandum of understanding between the Tribe, Mason County, and Ecology for review of water availability for new wells; (5) withdraw water from appropriation until further study is done; or (6) deny the petition and seek funding for further investigation to assess well-use impact on Johns Creek.

[9] Apparently, while Ecology was considering the Tribe's petition, Ecology was engaged in controversial rulemaking to withdraw from appropriation all ground water within the upper portion of Kittitas County.

The rulemaking petition record shows that Ecology weighed the pros and cons for each option. For example, Ecology recognized that closing the creek or withdrawing the basin from appropriation, as the Tribe requested, would satisfy the Tribe and avoid appeals by the Tribe. Further, it would not require code amendment by Mason County or the city of Shelton, and it would create an incentive for the city and county to work together to speed up extension of a municipal water line to the basin's industrial land. Finally, it would create incentive to find funding for a ground water study and might prevent further depletion of instream flows. But Ecology also found strong reasons weighing against closing or withdrawing the basin, including that resources to amend the rule would displace work underway in other priority WRIAs, the amendment would not cover all the Tribe's interest within the WRIA 14, and the closure would limit development in the basin to sites that will have access to the municipal water line. Based on reactions to similar basin closures in Kittitas County, Ecology was concerned about the spread of misinformation. Ecology was also worried about an influx of petitions to close other basins experiencing similar conditions. And finally, Ecology considered that the governor's proposed budget cut funding for instream flow rulemaking, signaling that it was a low priority for the state.

Ecology reasoned that denying the Tribe's petition and seeking funding for a study to assess well-use impact on Johns Creek was the best option because it would maintain Ecology's statewide water resources priorities, take a step toward addressing the Tribe's concerns, and provide a higher level of information with which to make decisions and protect flows in the future. On the other hand, Ecology recognized that the Tribe did not support this option, the Tribe would likely seek gubernatorial and judicial review, and concern about future limits could increase well drilling and development.

Despite Ecology's consideration of the petition, the Tribe contends that Ecology's decision was unreasonable because it knew that junior wells were intercepting water causing Johns Creek not to meet its minimum instream flows.[10] The Tribe argues that in light of Ecology's knowledge of circumstances surrounding the dewatering of Johns Creek, its denial of the Tribe's petition due to budget limitations and need for more information was willful and unreasoning and, thus, arbitrary and capricious. The Tribe points to *Rios* for support. 145 Wn.2d at 493, 505-07.

In *Rios*, our Supreme Court held that the Washington State Department of Labor and Industries (L&I)'s refusal to initiate rulemaking to adopt a mandatory blood testing program for agricultural pesticide handlers to replace its existing voluntary program was arbitrary and capricious. 145 Wn.2d at 486-90, 505-08. The focus in *Rios* was on the extraordinary circumstances that convinced the court that L&I's refusal to engage in rulemaking was arbitrary and capricious—namely, the substantive statute requiring L&I to adopt the mandatory blood testing program if feasible and a report by L&I's own experts stating that such a program was

---

[10] Ecology has a different view of the unmet flows and junior wells. Ecology notes that the flows for Johns Creek were set at a 50 percent exceedance level, which means that on any given day, there is only a 50 percent chance of the creek having that flow level. In addition, Ecology's position is that site-specific hydrogeologic study is required to determine whether area ground water pumping is impacting stream flows and, if so, how much of an impact exists. *See Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 93, 11 P.3d 726 (2000) (rejecting that a stream having "unmet flows necessarily establishes impairment if there is an effect on the stream from ground water withdrawals" and recognizing that whether ground water withdrawal impairs senior minimum flows will depend "upon the nature of the appropriation, the source of aquifer, and whether it is upstream or downstream from or higher or lower than the surface water flow or level, and all other pertinent facts"). We note that in *Swinomish*, the Washington Supreme Court stressed that the legislature has "continued to recognize that retention of waters instream is as much a core principle of state water use as other goals, including economic well-being." 2013 WL 5689464, at *10. Whether the *Swinomish* decision will impact Ecology's stance on the proliferation of permit-exempt wells in Mason County under RCW 90.44.050 and the basin specific WACs remains to be seen.

necessary, feasible, and the best option. 145 Wn.2d at 506-08. The court viewed the report's conclusion as dispositive and, thus, the agency's decision not to adopt the program based on technical limitations, competing priorities, and limited resources was arbitrary and capricious. *Rios*, 145 Wn.2d at 506-08.

The Tribe argues that here, like in *Rios*, Ecology's refusal to engage in rulemaking due to budget constraints and other priorities is arbitrary and capricious. Although the *Rios* court did not accept L&I's budget constraints and other priorities rationale as the be-all and end-all, it recognized that those considerations were legitimate reasons for agency inaction. *Rios*, 145 Wn.2d at 499 n.8, 507 (stating that "the indisputable reality is that the [agency]'s finite fiscal resources require the director to exercise discretion in prioritizing among potential rulemaking initiatives" and that "fiscal constraints may reasonably determine whether an agency takes action (and, if so, how)[, b]ut an agency's allusion to fiscal considerations and prioritizing cannot be regarded as an unbeatable trump in the agency's hand"); *see also Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 393-94, 932 P.2d 139 (1997) (acknowledging that limited resources and choices among agency priorities are legitimate reasons for agency inaction and do not make an action arbitrary and capricious).

Here, the circumstances do not suggest that Ecology's decision not to initiate rulemaking was arbitrary and capricious. The extraordinary circumstances in *Rios* are not present. First, the agency's statutory directive is quite different. In *Rios*, the pesticide handlers sought a blood testing program under a statute that imposed a mandatory duty on L&I to protect workers when economically and technologically feasible. 145 Wn.2d at 496, 498-99. Here, the Tribe requested various amendments to the existing water management rules. Ecology has a duty to develop and implement a comprehensive state water resources program; but the legislature

11

expressly provided that Ecology "may develop the program in segments so that immediate attention may be given to waters of a given physioeconomic region of the state or to specific critical problems of water allocation and use." RCW 90.54.040(1).[11] And RCW 90.54.040(2) directs Ecology to modify existing and adopt new regulations *when needed and possible*. RCW 90.54.050 provides that whenever it appears necessary to the director in carrying out the policy of this chapter, Ecology *may* by rule withdraw various waters from additional appropriations until sufficient information and data are available to make sound decisions. Unlike the mandatory duty in *Rios*, the statutes at issue in this case clearly confer discretion on Ecology to prioritize instream flow rulemaking based on competing demands and limited resources. Here, one of the reasons Ecology did not initiate rulemaking in WRIA 14 was because that endeavor would displace work underway in other priority WRIAs.

Second, in *Rios*, the court thought it important that the pesticide handlers were not asking L&I to "embark on a new enterprise." 145 Wn.2d at 507. L&I had already made the blood testing program a priority by drafting guidelines for a voluntary program and assigning a team of experts to research the components of a successful program. *Rios*, 145 Wn.2d at 507. Here, the Tribe demands that Ecology direct substantial resources to water management in WRIA 14 when Ecology has articulated that its priorities are elsewhere. The Tribe argues that Ecology has demonstrated that WRIA 14 is a priority because it expended resources to promulgate instream flows. But Ecology set those flows in 1984. The record does not reflect that WRIA 14 is an ongoing priority; the agency has since shifted its priorities to other WRIAs, including fish critical basins and WRIAs that do not yet have established instream flow minimum regulations.

---

[11] The *Swinomish* decision calls into question interpreting this statute to prioritize economic growth over the preservation of minimum instream flows. 2013 WL 5689464, at *7-8, 13-14. However, as that particular issue is not before us, we do not further address it.

Finally, in *Rios*, L&I's own experts deemed the requested mandatory program necessary and feasible. 145 Wn.2d at 507-08. In contrast, here, Ecology determined that it lacked information for informed decision making about water availability in Johns Creek basin. Prior to denying the Tribe's petition, Ecology unsuccessfully sought an Environmental Protection Agency grant for a Johns Creek basin hydrology study to develop appropriate water management options.

Agencies have wide discretion to choose and schedule rulemaking efforts. *Rios*, 145 Wn.2d at 507. Here, Ecology decided not to act on the Tribe's petition after carefully considering it and weighing the pros and cons of various proposed responses. Ecology refused to supplement and revise the water management rules in WRIA 14 due to limited resources, other priorities, and lack of technical information on which to make informed decisions. As an alternative, Ecology sought funding for a study of the basin and directed Mason County to limit residential ground water permits to in-house domestic use. Ecology presented valid justifications supported by the record for not taking rulemaking action and the record supports that Ecology came to its decision through a process of reasoning. Ecology's decision to deny the Tribe's petition is not arbitrary and capricious.

II.     VALIDITY OF EXISTING WRIA 14 WATER MANAGEMENT RULES

On appeal, the Tribe attempts to separately challenge the validity of various provisions of the existing WRIA 14 water management rules. But the superior court did not address the Tribe's request for a declaratory judgment invalidating various rules because it found the denial

of the Tribe's petition dispositive and remanded for rulemaking.[12] Accordingly, there is no ruling before us to review.

In sum, we hold that Ecology complied with the APA's requirement to specifically address the Tribe's concerns in its letter denying the Tribe's rulemaking petition and that Ecology's denial of the Tribe's rulemaking petition was not arbitrary and capricious. Accordingly, we uphold Ecology's denial of the Tribe's petition and thereby reverse the superior court's order.

FORBES, J.P.T.

We concur:

QUINN-BRINTNALL, J.

JOHANSON, A.C.J.

---

[12] There is significant overlap between the Tribe petition for rulemaking, which suggests various amendments to the existing rules, and the Tribe's argument that those same provisions are invalid without the proposed amendments.