FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 56

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NANCY G. KISSNER, Executrix of the Estate of Lillian M. Peste and MERVYN SETTLE, Executor of the Estate of Lillian M. Peste, | No. 44809-2-II |
| Respondents, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF REVENUE, a state agency, | UNPUBLISHED OPINION |
| Appellant. | |
| ANNE D. HARRISON, as personal representative of the Estate of HARRIET O. DAVIS, | (Consolidated with No. 45032-1-II) |
| Respondent, | |
| v. | |
| DEPARTMENT OF REVENUE OF WASHINGTON STATE, | |
| Appellant. | |

JOHANSON, C.J. — In this consolidated appeal, the Department of Revenue (DOR) appeals (1) the trial court's summary judgment order in favor of Lillian M. Peste's Estate, requiring DOR to issue an estate tax refund; and (2) an agreed order in favor of Harriet O. Davis's Estate, requiring DOR to issue a release of estate tax liability. The trial court's orders were based on *In re Estate*

*of Bracken*, 175 Wn.2d 549, 290 P.3d 99 (2012). In direct response to *Bracken*, in 2013, the legislature amended portions of Washington's Estate and Transfer Tax Act,[1] retroactive to estates, like Peste and Davis,[2] whose decedents died on or after May 17, 2005. LAWS OF 2013, 2nd Spec. Sess., ch. 2, § 9. Several estates challenged those amendments, but in *In re Estate of Hambleton*, 181 Wn.2d 802, 809, 335 P.3d 398 (2014), our Supreme Court upheld the 2013 amendments, specifically confirming the validity of the amendments' retroactive application.

The Estates here argue that, notwithstanding *Hambleton*, DOR (1) violated the Administrative Procedure Act (APA)[3] when it refused to issue a refund to Peste and a release of liability to Davis, (2) should be equitably estopped from applying the 2013 amendments to them, and (3) should be judicially estopped from applying the 2013 amendments to them.[4] We hold that DOR did not violate the APA when it denied Peste's refund or Davis's release of liability and that DOR is neither equitably nor judicially estopped from applying the 2013 estate tax amendments to the Estates. Accordingly, in Peste's case, we reverse the trial court and remand with instructions to enter judgment in DOR's favor, and we reverse the trial court's order requiring DOR to issue a release to Davis.

---

[1] Ch. 83.100 RCW.

[2] We refer to the parties collectively as "the Estates" and individually as "Peste" or "Davis."

[3] Ch. 34.05 RCW.

[4] In its supplemental briefing, the Estates agree that *Hambleton* resolved the "legality of the retroactive application of the 2013 amendments" to the Washington Estate and Transfer Tax Act against them. Suppl. Br. of Resp't at 10. They claim that their requested relief is now based on only their APA and estoppel theories. However, the Estates specifically abandon the collateral estoppel argument raised in their opening brief.

FACTS

I. THE PESTE ESTATE

Fred Peste died in March 1985. Fred's[5] estate made the federal qualified terminable interest property (QTIP) election. Lillian Peste died in July 2008. In October 2009, Peste filed its Washington estate and transfer tax return and paid, under protest, the estate tax on the QTIP-elected property included in Peste's federal taxable estate. In June 2010, Peste requested a refund of $717,239 in QTIP taxes. Six days later, DOR denied the refund.

In July 2010, Peste petitioned for judicial review of DOR's denial of its refund. The trial court stayed the action until the Supreme Court resolved *Bracken*. The parties' stipulated motion for a stay provided, in relevant part, that "[t]he central issue in *Bracken* is identical to that in this action. Therefore, to prevent unnecessary litigation it would be in the interest of justice to issue a stay." Peste Clerk's Papers (CP) at 33.

In October 2012, our Supreme Court decided *Bracken* in favor of the taxpayers. 175 Wn.2d at 554. On January 10, 2013, the court denied reconsideration of *Bracken*. 175 Wn.2d at 606. In February 2013, legislation was introduced in the State House of Representatives amending the definitions of "transfer" and "Washington taxable estate" to expressly include QTIP in the Washington taxable estate of a decedent. Peste CP at 84; LAWS OF 2013, 2nd Spec. Sess., ch. 2, § 2. The legislation included a retroactivity provision applying the amendments to the estates of decedents, like Lillian, who died on or after May 17, 2005. LAWS OF 2013, 2nd Spec. Sess., ch. 1, § 9. In March 2013, before the amendment to the Washington estate tax was enacted, Peste moved

---

[5] For clarity, we refer to spouses who share the same last name by their first names, intending no disrespect.

3

for an order lifting the stay and for summary judgment, arguing that *Bracken* resolved all issues in its favor. DOR opposed the Peste's motion, arguing that (1) the trial court should continue to stay the action so that the legislature had the opportunity to fully consider and act upon the pending legislation, (2) *Bracken* should be overruled, and (3) Peste's calculation of interest due on any refund was excessive.

On April 12, 2013, the trial court granted Peste's motion and ordered DOR to refund Pestes's principal and interest overpayment. On April 25, 2013, DOR appealed the trial court's order. On May 28, 2013, Peste moved to dismiss the appeal under RAP 18.9(c) and .14, alleging that DOR's appeal was frivolous, filed solely for the purpose of delay, and clearly controlled by settled law. The legislation became effective on June 14, 2013. LAWS OF 2013, 2nd Spec. Sess., ch. 2. On June 25, this court's commissioner denied Peste's motion to dismiss "in light of the legislature's recent action." Notation Ruling (Wash. Ct. App. June 25, 2013).

## II. THE DAVIS ESTATE

John H. Davis died in September 2003, and his estate also made the federal QTIP election. John's wife, Harriet O. Davis, died in September 2009. In June 2010, Davis filed its Washington estate tax return but did not pay any estate taxes on QTIP-elected property. In November 2010, DOR informed Davis that it owed $1,403,031.29, including interest, in estate taxes on the QTIP-elected property. Several weeks later, Davis replied, explaining that in its opinion it did not owe any QTIP taxes and that it was its "full intention not to make a final distribution of the estate before resolution of [*Bracken*] by the Washington Supreme Court." Davis CP at 47.

In October 2012, our Supreme Court decided *Bracken*. In December 2012, Davis sent DOR a letter, reiterating its position that it did not owe estate taxes on QTIP-elected property and

4

DOR informed Davis that it was pursuing a motion for reconsideration of *Bracken* and would notify it "when the decision is made." Davis CP at 180. The record does not show either that DOR contacted Davis or that Davis made a new request for a release after the Supreme Court denied reconsideration of *Bracken*. After receiving no new information from DOR, in May 2013, Davis filed a petition for mandamus and for declaratory relief under the Trust and Estate Dispute Resolution Act (TEDRA),[6] seeking to compel DOR to issue a final release of liability to Davis and for a declaratory judgment that Davis did not owe QTIP estate taxes. Davis amended its petition several weeks later to include a petition for judicial review under the APA. Davis and DOR entered into a "Stipulation and Agreed Order," under which the parties agreed that, based on *Bracken*, Davis was entitled to a release under the APA. They also agree that their order

> does not preclude [DOR] from an appeal of this order that would otherwise be available had this order been entered by the court after a contested hearing for the purpose of presenting a good faith argument for the reversal of [*Bracken*].

Davis CP at 282.

DOR appeals that order.[7]

## ANALYSIS

The Estates argue that (1) the *Hambleton* decision does not address their argument that in failing to issue the refund to Peste and the release of liability to Davis, DOR violated the APA,

---

[6] Ch. 11.96A RCW.

[7] We stayed these cases until our Supreme Court's decision in *Hambleton*. After *Hambleton* was decided on October 2, 2014, we ordered the parties to file supplemental briefing addressing *Hambleton*'s implications, particularly addressing the Estate's arguments that its APA claims and its estoppel claims survived *Hambleton*.

and (2) DOR should be equitably and judicially estopped from applying the 2013 amendment to them.

DOR argues that (1) it did not violate the APA because the relevant statutes do not specify a time period within which a refund or release must be issued and it acted reasonably in giving the legislature time to consider the 2013 amendment, and (2) the Estates cannot establish any of the required elements of equitable or judicial estoppel. We agree with DOR that it did not violate the APA and that the Estates cannot establish equitable or judicial estoppel.

## I. APA VIOLATIONS

The Estates argue that DOR's failure to issue a refund to Peste or a release to Davis violated the APA because DOR's action was (1) contrary to DOR's legal authority, (2) arbitrary and capricious, or (3) unconstitutional. We hold that DOR did not violate the APA because (1) it did not act contrary to its legal authority, (2) waiting for the legislature to act was reasonable given the attending facts and circumstances, and (3) the Estates cannot demonstrate that DOR violated their substantive due process rights.

### A. STANDARD OF REVIEW AND RULES OF LAW

When reviewing an appeal from summary judgment and from a trial court's conclusions in a tax refund case, our review is de novo. *Bracken*, 175 Wn.2d at 562 (citing RCW 83.100.180; RCW 11.96A.200; *Lamtec Corp. v. Dep't of Revenue*, 170 Wn.2d 838, 842, 246 P.3d 788 (2011); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000)). A party is entitled to summary judgment where there is no dispute as to any material fact and the party is entitled to judgment as a matter of law. CR 56(c).

6

DOR's actions are subject to review under the APA. RCW 34.05.570; *see also, e.g., Dep't of Revenue v. Bi-Mor, Inc.*, 171 Wn. App. 197, 201-02, 286 P.3d 417 (2012). The APA provides for judicial review of "other agency action[s]." RCW 34.05.570(4). The Estates are entitled to relief from DOR's other agency actions if those actions are (1) unconstitutional, (2) "[o]utside the statutory authority of the agency or the authority conferred by a provision of law," or (3) arbitrary or capricious. RCW 34.05.570(4)(c)(i)-(iii). The Estates bear the burden of establishing the invalidity of DOR's actions. RCW 34.05.570(1)(a).

Because no disputed issues of fact exist in this case, our review is confined to which party is entitled to judgment as a matter of law.

### B. DOR Did Not Act Outside its Legal Authority

The Estates argue that DOR violated the APA because it acted outside its legal authority when it refused to issue the refund to Peste and the release to Davis because, after *Bracken,* it had a duty to do so. DOR argues that the estate tax laws do not specify a time within which it must issue a refund to Peste or a release to Davis.[8] We hold that DOR did not violate the APA because it did not act outside its statutory authority when it denied Peste's refund and refused to issue Davis's release.

Peste points to RCW 83.100.130(1), WAC 458-20-229(7), and the trial court's summary judgment order as the legal authorities that define DOR's statutory authority with respect to its refund. We hold that DOR did not act contrary to any of the authorities that Peste identifies.

---

[8] We assume without deciding that the Estates properly preserved their challenges to DOR's failure to issue a refund to Peste and a release to Davis as alleged "other agency action[s]" under RCW 34.05.570(4)(b).

RCW 83.100.130(1) states,

> If, upon receipt of an application by a taxpayer for a refund, or upon examination of the returns or records of any taxpayer, [DOR] determines that . . . a person required to file the Washington return under RCW 83.100.050 has overpaid . . ., [DOR] shall refund the amount of the overpayment.

WAC 458-20-229(7) provides that DOR "will grant refunds or credits required by a court or Board of Tax Appeals decision, if the decision is not under appeal." The trial court's summary judgment order stated that DOR "shall within two weeks" issue a refund to Peste. Peste CP at 134.

In June 2010, Peste applied for a refund of the estate taxes it paid on QTIP-elected property. Six days later, more than two years before *Bracken*, DOR determined that Peste had not overpaid and was, thus, not entitled to a refund. DOR made this determination under RCW 83.100.130(1) and its determination was subject to judicial review and appeal.

But Peste claims that DOR acted outside its statutory authority and violating the APA because, as soon as *Bracken* was decided, RCW 83.100.130(1) required DOR to make an immediate refund. This argument is unpersuasive because the statute's language requires DOR to issue a refund either (1) upon a taxpayer's application or (2) upon DOR's own examination and determination that a refund is due. RCW 83.100.130(1). Here, there is no evidence in the record to suggest either that Peste applied for the refund post-*Bracken* or that DOR made a new determination that Peste was not entitled to a refund. The application for a refund and the denial occurred in 2010, before *Bracken*. Moreover, as DOR points out, RCW 83.100.130(1) does not prescribe a specific time within which it must issue a refund.

Second, Peste claims that WAC 458-20-229(7) defines DOR's statutory authority and since DOR has not issued a refund, it is acting contrary to the regulation. This argument fails because WAC 458-20-229(7) specifically states that DOR must pay a refund "if the decision is not under

8

appeal." DOR's order denying Peste's refund was "under appeal," when *Bracken* was decided because Peste filed a petition for judicial review in July 2010 and that appeal was pending until April 2013, when the trial court granted Peste's summary judgment motion. The trial court's summary judgment order is the subject of this appeal and, thus, DOR's statutory duty was not triggered by *Bracken*.

Finally, Peste relies on the trial court's summary judgment order itself, which states that DOR is to issue Peste's refund "within two weeks." Peste CP at 133. Again, however, DOR has appealed the summary judgment order and filed a notice that it is not required to post bond on appeal pursuant to RCW 4.92.030 and RAP 8.1(f). Thus, DOR did not have a duty to issue a refund immediately after *Bracken* based on the trial court's summary judgment order, WAC 458-20-229(7), or RCW 83.100.130(1) and Peste cannot establish that DOR violated the APA by acting outside its statutory authority.

Davis points to a similar statute, RCW 83.100.080, to support its position that DOR acted outside its statutory authority when it refused to issue a release. RCW 83.100.080 provides that DOR "shall issue a release when the tax due under this chapter has been paid. Upon issuance of a release, all property subject to the tax shall be free of any claim for the tax by the state."

But DOR's position since November 2010 has been that Davis has not paid all the estate tax it owes and, therefore, is not entitled to a release. Moreover, the agreed order that DOR entered into with Davis specifically contemplates this appeal, provides DOR with the opportunity to seek reversal of *Bracken*, and sets no timeline within which DOR must issue a release of liability. Therefore, Davis cannot demonstrate that DOR is acting contrary to its statutory authority.

Accordingly, because the Estates fail to demonstrate that DOR had a legal duty to issue a refund to Peste or a release to Davis, we hold that DOR did not violate the APA because its denial of the refund and refusal to issue a release is within its statutory authority.[9]

### D. DOR'S DENIAL OF A REFUND AND REFUSAL TO ISSUE A RELEASE WAS NOT ARBITRARY AND CAPRICIOUS

The Estates argue that DOR's "other agency actions" violated the APA because they were arbitrary and capricious since it "knew that once Bracken [sic] was final that it had a statutory duty" to issue a refund to Peste and a release to Davis. Br. of Resp't Peste at 20; Br. of Resp't Davis at 17. DOR argues that it did not process *Bracken*-related claims for refunds or releases out of deference to the legislative process and for pragmatic reasons. We hold that DOR's decision not to issue a refund to Peste and a release to Davis was not arbitrary and capricious because both decisions were taken with regard to attending facts and circumstances.

An "other agency action" is arbitrary and capricious when it is "willful and unreasoning" and "taken without regard to the attending facts or circumstances." *Squaxin Island Tribe v. Dep't of Ecology*, 177 Wn. App. 734, 742, 312 P.3d 766 (2013) (citing *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 26, 65 P.3d 319 (2003)).

DOR claims that if it had issued refunds and releases before the legislature had time to consider the 2013 amendments, it would have (1) interfered with the legislature's policy and decision-making process and (2) created logistical problems and litigation if the legislature had

---

[9] The Estates also identify DOR's failure to issue a refund or release after the 2013 amendments as an "other agency action" that they challenge here. Br. of Resp't Peste at 11; Br. of Resp't Davis at 9. But they offer no argument as to why DOR's refusal to issue a refund to Peste or a release to Davis after the 2013 amendments were enacted is outside DOR's legal authority. RAP 10.3(a)(6).

changed the law because DOR would need to make new efforts to recollect any taxes that it refunded and would be precluded from collecting taxes from estates that received a release. The logistical and cost-related concerns make DOR's decision not to issue a refund or a release reasonable in light of the facts and circumstances at the time.

The Supreme Court denied DOR's motion for reconsideration in *Bracken* on January 10, 2013. The first proposal to close the QTIP loophole was introduced in the legislature approximately one month later on February 18. Early drafts of that bill contemplated that it would be retroactive and would apply to the Estates. If DOR had issued refunds immediately after *Bracken*, it would have incurred additional litigation expense and spent time trying to recover the refunds it issued prior to the legislation's enactment. If DOR had issued releases, the estates who benefitted from them would get a windfall and there would have been a fiscal impact because DOR would be precluded from collecting estate taxes from those estates in the future. RCW 83.100.080 ("Upon issuance of a release, all property subject to the tax shall be free of any claim for the tax by the state."). DOR's decision not to issue refunds or releases until it knew whether there would be a new law was reasonable in light of those facts and circumstances. *Squaxin Island Tribe*, 177 Wn. App. at 742-43. And the delay, a mere five months, was reasonable under the circumstances.

It was also reasonable for DOR to not issue a refund to Peste while litigation was still pending and to enter into the agreed order with Davis instead of issuing a release. These decisions are consistent with the second issue that DOR identifies: issuing refunds and releases would create logistical problems and litigation costs if the legislature changed the law. If DOR had issued a refund to Peste once the 2013 amendment became effective, it would have needed to issue a new delinquency notice and make new efforts to collect Peste's estate taxes.

11

Instead of issuing a release to Davis before the legislature had the opportunity to act, DOR negotiated an agreed order with it, giving the legislature time and avoiding additional litigation. Again, had DOR issued a release to Davis, that release would have been a final determination that Davis had no estate tax liability, precluding any future efforts to assess estate tax liability. RCW 83.100.080. Accordingly, we hold that, based on the facts and circumstances known to DOR at the time, it was reasonable not to issue a refund to Peste or a release to Davis after *Bracken* was decided and while a legislative fix was pending. Therefore, the Estates have not met their burden to demonstrate that DOR's other agency actions were arbitrary and capricious.

E. DOR'S REFUSAL TO ISSUE A REFUND AND A RELEASE WAS CONSTITUTIONAL

The Estates argue that DOR violated the APA because failing to issue the refund to Peste and the release to Davis violated their substantive due process rights. We hold that failing to issue a refund to Peste and a release to Davis in the five months after *Bracken* and before the 2013 amendment took effect did not violate the Estates' substantive due process rights.

Both the Washington and the United States Constitutions mandate that no person may be deprived of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV, § 1; WASH. CONST. art. I, § 3. "The due process clause of the Fourteenth Amendment confers both procedural and substantive protections." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006). It is the Estates' burden to demonstrate that DOR's actions unconstitutionally violated their substantive due process rights and, thus, invalid under the APA. RCW 34.05.570(1)(a); *Christianson v. Snohomish Health Dist.*, 133 Wn.2d 647, 660-61, 946 P.2d 768 (1997).

The Estates rely entirely on *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 829 P.2d 765 (1992), to support their argument that DOR's failure after *Bracken* to issue a refund to Peste and a release to Davis was unconstitutional and violated their substantive due process rights. In *Sintra*, our Supreme Court held that a landowner's substantive due process rights were violated by the city of Seattle's continued enforcement of a Housing Preservation Ordinance (HPO) that the superior court had invalidated in another case. 119 Wn.2d at 6, 21-24. The purpose of the HPO was to alleviate a shortage of low income housing. *Sintra*, 119 Wn.2d at 21. The court applied a three-pronged test used for land use regulations and held that the HPO, as applied to Sintra, was unduly oppressive. *Sintra*, 119 Wn.2d at 21-22. Our Supreme Court concluded that while the purpose of the statute was legitimate, Sintra's property could not be singled out to resolve the problem and the $218,000 fee the city imposed on Sintra to develop its $670,000 property was "enormous." *Sintra*, 119 Wn.2d at 22.

The Estates argue that the city of Seattle's decision to continue enforcing HPO provisions against the plaintiffs in *Sintra* is similar to DOR's efforts to enforce the QTIP estate tax against them. They argue that DOR (1) "intentionally flouted" *Bracken* and the trial court's orders, (2) has animus toward estates who made the federal QTIP election and would benefit from *Bracken*, and (3) has acted irrationally and arbitrarily towards them. Br. of Resp't Peste at 17; Br. of Resp't Davis at 14.

However, this case is distinguishable from *Sintra* on each of those three points. First, DOR did not "flout" the trial court's orders in this case, but appealed them in order to advocate for overruling *Bracken* while allowing the legislative process to continue. In contrast, despite a trial court's determination that the HPO was unconstitutional in *Sintra*, the city of Seattle nevertheless

used the HPO to justify an "enormous" $218,000 fee before agreeing to approve a development plan. 119 Wn.2d at 22.

Second, there is no evidence that DOR acted with any animus toward the Estates. Unlike the large fee the city of Seattle levied *after* the HPO was invalidated in *Sintra*, here DOR made its decision on Peste's refund request in June 2010—more than two years prior to *Bracken*—and, apart from continuing to litigate, there is no evidence that DOR continued to enforce any provisions of the estate tax invalidated in *Bracken*. DOR denied Davis's request for a release in November 2010 and, after *Bracken*, made no efforts to collect the money or enforce the law against it. Instead, DOR disagreed with our Supreme Court's decision in *Bracken* and sought, either through the courts or the legislature, to have it overturned in a timely fashion. Neither of these activities is illegal, irrational, or supports an inference that DOR has animus against those who made the QTIP election.

Finally, as is stated above, DOR's decision not to issue refunds or releases immediately following *Bracken* was not arbitrary and capricious because it was based on a reasonable desire to avoid the increased costs and logistical difficulties that would follow if the pending legislation were adopted.

Apart from their reliance on *Sintra*, the Estates make no other argument that DOR's actions were unconstitutional. Accordingly, the Estates have not met their burden to demonstrate that DOR's failure to issue Peste's refund and Davis's release were unconstitutional. We hold that DOR did not violate the APA.

## II. EQUITABLE ESTOPPEL

The Estates argue that DOR should be equitably estopped from applying the 2013 amendments to them because DOR's position at trial was that if *Bracken* were decided in the Estates' favor, the Estates would be entitled to a refund and a release and, unlike in *Hambleton* where the equitable estoppel claim was unsuccessful, the Estates here can demonstrate reliance on DOR's position at trial. We hold that equitable estoppel does not apply because DOR's position on appeal is not inconsistent with its position at trial.

A successful claim of equitable estoppel requires clear, cogent, and convincing proof of the following elements:

> "(1) [A] party's admission, statement[,] or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement[,] or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement[,] or admission."

*Hambleton*, 181 Wn.2d at 833-34 (quoting *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993)).

Claims of equitable estoppel against the government are disfavored and also require proof that "equitable estoppel is necessary to prevent a manifest injustice and that the existence of governmental functions will not be impaired as a result of the estoppel." *Hambleton*, 181 Wn.2d at 833-34. This court should be most reluctant to determine that the government is equitably estopped "'when public revenues are involved.'" *Hambleton*, 181 Wn.2d at 834 (quoting *Kramarevcky*, 122 Wn.2d at 744).

Peste points to the stipulated motion for a stay pending *Bracken* as DOR's statement is inconsistent with its position on appeal because it "represents admissions and statements by the DOR that the Estate is entitled to a resolution of its refund request based upon the outcome of

15

*Bracken.*" Suppl. Br. of Resp't at 13. Peste also argues that the caption of the stipulated motion, which reads, "Stipulated Motion for Order Staying This Action Pending Supreme Court Resolution of Dispositive Issue," makes DOR's inconsistent position clear. The stipulated motion, in fact, says only that "[t]he central issue in *Bracken* is identical to that in this action. Therefore, to prevent unnecessary litigation it would be in the interest of justice to issue a stay." Peste CP at 33. The stipulated motion is not proof that DOR agreed to issue a refund or that DOR waived any appellate review of the trial court's decision on Peste's claim. In light of Peste's burden to present clear, cogent, and convincing evidence, and our Supreme Court's position that equitable estoppel should be applied sparingly against the government in revenue cases, Peste fails at the first step of the equitable estoppel analysis because it cannot demonstrate that DOR's position on appeal is inconsistent with its position at trial.[10]

Davis, likewise, points to its stipulation and agreed order as evidence that DOR's position on appeal is inconsistent with its position at trial. But the stipulation and agreed order specifically reserved to DOR the right to appeal: "This agreed order does not preclude [DOR] from an appeal of this order that would otherwise be available had this order been entered by the court after a contested hearing for the purpose of presenting a good faith argument for the reversal of [*Bracken*]." Davis CP at 282. In its opening brief to this court, filed after the 2013 amendment but before *Hambleton*, DOR specifically argued both that the 2013 amendment superseded

---

[10] Peste argues that it relied on DOR's position at trial because it agreed to the stipulated motion. It is hard to see how Peste was injured by this reliance, the next step in the equitable estoppel analysis. Had Peste not agreed, the trial court would either have (1) issued a stay anyway or (2) decided its claim for a refund on the merits. Prior to our Supreme Court's decision in *Bracken*, which provided controlling precedent, there is no way to know the result of that decision. This is not clear, cogent, and convincing evidence of injury.

*Bracken* and that *Bracken* should be reversed. DOR's argument is consistent with the agreed order because it argued, based on the 2013 amendment, that *Bracken* should be reversed. The Estates offer no authority for the proposition that equitable estoppel requires DOR to make the identical argument here as it made to the trial court while ignoring a change in the controlling law. Because Davis cannot demonstrate by clear, cogent, and convincing evidence that DOR's position on appeal is inconsistent with its position at trial, equitable estoppel does not apply.[11]

Accordingly, we hold that DOR is not equitably estopped from applying the 2013 amendment to the Washington Estate and Transfer Tax Act to the Estates because DOR's position on appeal is not inconsistent with its position at trial.

### III. JUDICIAL ESTOPPEL

The Estates argue that DOR's position on appeal is inconsistent with its position at trial, as stated in its stipulation and agreed order with Davis and its agreement with Peste to stay the proceedings pending *Bracken*. We hold that judicial estoppel does not apply because, based on *Hambleton*, DOR did not take an inconsistent position nor did it mislead the trial court.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). The two guiding principles that justify the application of judicial

---

[11] The Estates do not argue that the failure to apply equitable estoppel against DOR in this case would work a manifest injustice or that governmental functions would not be impaired by the application of equitable estoppel in this case. Since they must argue these factors when seeking to equitably estop the government, their claims fail on that account as well. *Hambleton*, 181 Wn.2d at 834.

estoppel are "preservation of respect for judicial proceedings" and "avoidance of inconsistency, duplicity, and waste of time." *Anfinson*, 174 Wn.2d at 861.

"Three core factors" determine whether judicial estoppel applies: "(1) whether 'a party's later position' is 'clearly inconsistent with its earlier position'; (2) whether 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Arkison*, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

The Estates point to the stipulation and agreed order in Davis as proof that DOR's position was that *Bracken* controlled the outcome in both Davis's and Peste's cases and that if the *Bracken* court ruled in the taxpayers' favor, the Estates were entitled to a refund and release. Their argument is unpersuasive because, in a footnote, *Hambleton* specifically stated that judicial estoppel did not apply and *Hambleton* is procedurally very similar to the procedural stance here.

In *Hambleton*, our Supreme Court, perhaps anticipating judicial estoppel claims in cases like this one, addressed the issue in a footnote. 181 Wn.2d at 833 n.5. In *Hambleton*, the estate did not pay taxes on its QTIP-elected property and DOR, after disallowing the QTIP deduction, sought to recover over $1 million in estate taxes. 181 Wn.2d at 815. DOR and the estate agreed to stay their proceedings pending *Bracken* and once *Bracken* was decided, the trial court entered summary judgment for the estate. *Hambleton*, 181 Wn.2d at 815. Although no party raised judicial estoppel in *Hambleton*, our Supreme Court addressed it in a footnote, concluding that "[j]udicial estoppel is not applicable. The parties have not taken inconsistent positions, nor have they misled

18

the court. It was the legislature that changed the law that applies to the cases." 181 Wn.2d at 833 n.5.

The procedural posture in Peste's case is almost identical to *Hambleton*. In Peste, the parties agreed to a stay pending *Bracken* because the central issue in *Bracken* was identical. After *Bracken* was decided, Peste moved to lift the stay and for summary judgment, which the trial court granted. At trial, in its response to Peste's motion for stay and summary judgment, DOR argued that (1) the case should continue to be stayed to give the legislature the opportunity to fully consider the pending legislation, (2) *Bracken* should be overruled, and (3) Peste's calculation of interest was excessive. DOR's position is not clearly inconsistent on appeal—where it now argues that, in light of the 2013 amendment and *Hambleton*, Peste is not entitled to a refund—nor did it mislead the trial court. As in *Hambleton*, the legislature merely changed the law that applies to their case. DOR should not be judicially estopped from applying the 2013 amendments to Peste.

In Davis's case, Davis petitioned for review under the APA after *Bracken* and the parties entered into a stipulation and agreed order. In that stipulation, DOR agreed that if *Bracken* controlled the case's outcome, Davis would be entitled to a release. However, DOR expressly reserved the right to appeal in any manner "that would otherwise be available had th[e] order been entered by the court after a contested hearing" in order to seek reversal of *Bracken*. Davis CP at 282. As their stipulation anticipated, DOR appealed and, shortly thereafter, the legislature changed the law. Again, DOR's position on appeal is not inconsistent with its position at trial because the applicable law changed and the new law applies retroactively to Davis.

19

Accordingly, because the law that applies to these cases changed, we hold that DOR did not take inconsistent positions and did not mislead the court. We reverse and remand with instructions to enter judgment in DOR's favor.

## IV. ATTORNEY FEES

The Estates argue that they are entitled to attorney fees under RAP 18.1(a) and 18.9(a) because DOR's appeal is "solely for the purpose of delay." Br. of Resp't Peste at 45; Br. of Resp't Davis at 40. Since DOR is the prevailing party, we deny the Estates' requests for attorney fees.

We reverse and remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.